FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ APR 29 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JAMIR KING,                                  :
                                             :
                          Petitioner,        :
                                             :     MEMORANDUM & ORDER
              -against-                       :
                                             :     15-CV-7403 (ENV)(LB)
MICHAEL CAPRA,                                :
                                             :
                          Respondent.   :
------------------------------------------------------------- x
VITALIANO, D.J.

Jamir King has filed a *pro se* petition for a writ of *habeas corpus*, directed at his state

court conviction, pursuant to 28 U.S.C. § 2254. *See* Dkt. 1 ("Pet."). For the reasons set forth

below, the writ is denied and the petition is dismissed.

Background[1]

I.    The Shooting

In the early morning hours on September 26, 2010, Otis Moore and James Drew were

shot while standing outside at the Redfern Housing Project on Hassock Street in Far Rockaway,

Queens. *See* Dkts. 8-1–8-6 ("Trial Tr."). Cadisha Davis witnessed the incident. Trial Tr. at 244.

According to Davis, King, a member of the Crips gang, instigated an argument with Moore, an

alleged member of the rival Bloods. *Id.* at 247-49. King walked away and Moore followed him;

suddenly, shots were fired. *Id.* at 249-51, 254. As Davis ran from the scene, she saw King

pointing a gun at Moore as Moore lay bleeding on the ground. *Id.* at 252, 254-55. Drew, who

---

[1] In light of King's conviction, the Court recites the facts in the light most favorable to the
verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

1

happened to be standing nearby, was hit by two stray bullets. *Id.* at 394. Both men survived the shooting.

II.    Trial and Post-Conviction Proceedings

King was arrested on September 28, 2010. In March 2012, he was tried before a jury in Queens County Supreme Court on two counts each of attempted murder in the second degree, assault in the first and second degree, and criminal possession of a weapon in the second degree. On March 16, 2012, King was found guilty of assault in the first degree as to Moore and on both possession counts. He was found not guilty on the remaining counts. *Id.* at 530-32; *see also* Pet. at 28-30 (attaching verdict sheet). King was sentenced to 25 years for the assault conviction and 15 years for the possession convictions, to run concurrently, followed by five years of post-release supervision. Dkt. 8-6 at 111 ("Sentence Tr.") at 8-9.

King took his direct appeal to the Appellate Division, Second Department, arguing that (1) the evidence was insufficient to establish guilt and, therefore, the verdict was against the weight of the evidence; (2) he was denied a fair trial because the trial court had permitted the prosecutor to impeach his own witness; and (3) he was denied a fair trial by certain comments made by the prosecutor on summation that positioned him as an unsworn witness. Dkt. 8 ("Defendant-Appellant's Br.") at 19, 24, 33. On July 16, 2014, the Appellate Division affirmed the judgment of conviction, rejecting all three grounds on the merits, including the summation argument, which the court had found was unpreserved for appellate review. *People v. King*, 119 A.D.3d 819, 989 N.Y.S.2d 315 (2nd Dep't 2014). On October 29, 2014, the New York Court of Appeals denied King's application for leave to appeal. *People v. King*, 24 N.Y.3d 1003, 21 N.E.3d 573 (2014).

On December 10, 2014, King filed his first *pro se* petition for a writ of error *coram nobis*,

2

alleging ineffective assistance of appellate counsel in relation to his direct appeal. Dkt. 8-1 at 15 ("Dec. 10, 2014 Aff."). He complained that his appellate counsel did not consult him about issues to be included in his brief, and, as a result, had failed to raise several viable arguments— namely, that King's waiver of counsel at several pre-trial hearings was improper; that expert testimony about gang membership should not have been admitted at trial; and that the prosecutor had improperly injected his opinion into the summation, thus acting as an unsworn witness. *Id.* at 5-6; *see also* Dkt. 8-1 at 21 ("Dec. 10, 2014 Mem. of Law") at 3-6. On May 13, 2015, the Appellate Division denied the writ. *People v. King*, 128 A.D.3d 851, 7 N.Y.S.3d 906 (2nd Dep't 2015). King did not seek leave to appeal the denial to the Court of Appeals, nor did he end his quest for a state court remedy.

On July 1, 2015, King filed a second *pro se* petition for a writ of error *coram nobis*, again alleging ineffective assistance of appellate counsel. Dkts. 8-1 at 120, 8-2 ("July 1, 2015 Aff."). This time, he argued that his appellate counsel should have raised a claim for ineffective assistance of trial counsel, based on the latter's failure to object to the admission of a verdict sheet listing the statutory elements of the crimes charged. *Id.* On December 26, 2015, the Appellate Division denied this writ as well. *People v. King*, 134 A.D.3d 958, 20 N.Y.S.3d 539 (2nd Dep't 2015). Once more, King did not seek leave to appeal the denial to the Court of Appeals. But, several days later, on December 28, 2015, he timely brought the instant *habeas* petition.

### Standard of Review

Post-conviction federal *habeas* relief is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which provides that a writ of *habeas corpus* shall not issue with respect to any claim of a prisoner in state

custody that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). This deferential review is accorded to any state court decision disposing of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Circumscription of the power of district courts to grant federal *habeas* relief to state prisoners is exactly what Congress intended. "Section 2254(d) reflects the view [of Congress] that *habeas corpus* is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotations omitted). With its mission targeting extreme malfunctions in a state criminal proceeding, AEDPA review "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (citation omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

Given these ground rules, *habeas* jurisprudence is well-cabined. Emblematic of this understanding, for AEDPA purposes, "'clearly established federal law' . . . refers to the holdings, as opposed to the *dicta*," of Supreme Court decisions that are controlling law "as of the time of the relevant state court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L.

Ed. 2d 389 (2000). Moreover, a state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

But, there is a caution: the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 562 U.S. at 103). Still, as the Supreme Court has underscored, if the AEDPA "standard is difficult to meet [before federal *habeas* relief may be awarded]– and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (citation and internal quotations omitted).

Discussion

I.  Sufficiency of the Evidence

King asserts that his conviction was based upon insufficient evidence, because the State's "main eyewitness gave testimony that was so filled with inconsistencies and contradictions [that] it could not have been relied upon." Pet. at 15. This argument was raised, unsuccessfully, on direct appeal to the Appellate Division, which held that the evidence was "legally sufficient to

establish the [petitioner's] guilt beyond a reasonable doubt." *King*, 119 A.D.3d at 819.

Generally, in evaluating challenges to sufficiency of the evidence, a reviewing court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Where, as here, the state court addressed a claim on the merits, a "twice-deferential" standard of review applies, under which the federal *habeas* court may not overturn the state court "unless the decision was objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43, 132 S. Ct. 2148, 183 L. Ed. 2d 32 (2012) (internal quotation marks omitted); *see also Cavazos v. Smith*, 565 U.S. 1, 2, 132 S. Ct. 2, 181 L. Ed. 2d 311 (2011) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.")

King fails to meet that standard here. At trial, eyewitness Cadisha Davis testified that she saw King arguing with Moore, then heard gunshots and saw King pointing a gun at Moore. Trial Tr. at 247-55. She also testified that, several days after the shooting, she asked King why he had shot Moore, and he responded, "you know how we give it up." *Id.* at 257-58. King challenges her testimony, focusing on the fact that Davis did not recall what the shooter was wearing and her hesitation in answering certain questions. Pet. at 15-16. However, these purported weaknesses in her testimony do not undermine the jury's findings.

Beyond that, the jury verdict was further supported by the testimony of witness Floyd Johnson, who stated that he saw King and Moore talking just before hearing a gunshot. Trial Tr. at 296-97. Though he did not know who fired the shot, Johnson stated that he saw King holding "something black in his hands" with "a little light" coming from it, then saw a "flash" near King,

and King running away after the shooting. *Id.* at 298, 319. King's arresting officer testified that King had told him his victims would not come forward against him. *Id.* at 385. In addition, Officer Donnell Myers testified as to the rivalry between the Crips and Bloods, which gave context to the argument the witnesses observed between King and Moore as well as the witnesses' fear of retribution for testifying against gang members and the potential effect of that fear on their testimony.

Petitioner, obviously, embraces the exculpatory testimony given by Drew that he was not the shooter, *id.* at 397, and Moore's testimony that he did not see who shot him, *id.* at 409. Drew also testified that he did not see King at the scene the night of the shooting, but multiple witnesses placed King at the scene. *Id.* at 397. Moore testified that he passed out after being shot and did not remember whether he had been speaking to anyone just before the shooting. *Id.* at 408-10. At bottom, their testimony, regardless how exculpatory the nature, did not necessarily preclude the jury from crediting Davis and Johnson. The jury could have reasonably inferred that Drew and Moore's testimony was affected by memory loss, fear of retribution, and/or the desire not to be seen as cooperating with law enforcement. The short of it is that, in this light, the Appellate Division's rejection of King's legal sufficiency challenge was not objectively unreasonable, and this claim must be dismissed.

## II.     Impeachment of the State's Witness

King next argues that the trial court erred in allowing the prosecution to impeach its witness, Floyd Johnson, which, in his view, violated New York Criminal Procedure Law § 60.35 and "deprived [him] of his due process right to a fair trial on properly admitted evidence only." Pet. at 17. At trial, Johnson testified, somewhat confusingly, that "for the shots being fired, I would have to take the fifth because I would be incriminating myself." Trial Tr. at 298. He also

stated that during the shooting he saw a light emitted from King's hand, like "a little light" from a "cell phone." *Id.* The prosecutor subsequently impeached Johnson based on his prior grand jury testimony and a prior written statement. *Id.* at 304, 314-15. Reviewing King's challenge to the impeachment on direct appeal, the Appellate Division found that the trial court committed no error, because "[c]ontrary to the defendant's contention, the witness's testimony tended to disprove the People's case and affirmatively damaged the People's position," thus complying with § 60.35. *King*, 119 A.D.3d at 819-20; *see also* N.Y. Crim. Proc. Law § 60.35(1) (allowing party to impeach own witness through prior statement where witness "gives testimony upon a material issue of the case which tends to disprove the position of such party").

First off, claims for violations of state law are not cognizable on federal *habeas* review, which concerns violations of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). To prevail on a constitutional evidentiary challenge, a petitioner "must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

Assuming the state courts misinterpreted New York's rules of evidence, King cannot morph the claimed error into a constitutional violation here, since the Constitution "places no restrictions on a prosecutor's ability to impeach his own witness." *Dunston v. Griffin*, No. 16-CV-821 (BMC), 2016 WL 1255727, at *4 (E.D.N.Y. Mar. 29, 2016); *see also* Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."). Accordingly, its resolution by the state courts not being contrary to any precedent declared by the Supreme Court, this claim must be dismissed.

III.     Unsworn Witness Rule

King claims that the was deprived of a fair trial because the prosecutor acted as an unsworn witness by remarking upon the witnesses' credibility during summation. He singles out the following comments: (1) "You can credit" and "you are going to credit" Cadisha Davis's testimony, Trial. Tr. at 461; (2) Davis is the "only one that's fully credible in telling you what happened," *id.* at 475; (3) "Otis Moore was untruthful when he testified," *id.* at 467; and (4) "[Moore] is a Blood member," *id.* at 463-64. King did not lodge an objection to any of these comments at trial. But, he also complains of one comment to which his trial counsel did object, albeit in a general manner: the objection as to the prosecutor's comment that Johnson was "not being truthful when he testified," which objection the trial court overruled, instructing the jury that the prosecutor's statement was argument, not evidence. *Id.* at 471-72.

This argument ran into a dead end on direct appeal to the Appellate Division, which ruled that King had failed to preserve his challenges to the first group of comments under New York's contemporaneous objection rule, and even as to the latter comment, because "he registered only a general one-word objection." *King*, 119 A.D.3d at 820 (citing N.Y. Crim. Proc. Law § 470.05). As a finishing touch, the Second Department noted that "[i]n any event, the remarks were fair response to defense counsel's summation or fair comment on the evidence." *Id.*

A federal *habeas* court will not review a claim rejected by a state court if the decision "rests on state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). The contemporaneous objection rule constitutes an independent and adequate state law ground, *Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013), and the state court's conclusion "that

a petitioner's claim was 'unpreserved' is sufficient to establish" that the state court relied upon it, *Boyd v. Griffin*, No. 11-CV-324 (JFB), 2014 WL 1797477, at *9 (E.D.N.Y. May 7, 2014). Since the Appellate Division plainly stated that King failed to comply with the contemporaneous objection rule, this claim is procedurally barred.

"To overcome a procedural bar, petitioner must 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,'" *i.e.*, that he is actually innocent. *Boyd*, 2014 WL 1797477, at *9 (quoting *Coleman*, 501 U.S. at 750). To establish cause for default, a defendant must show that "some objective factor external to the defense impeded efforts to comply with the State's procedural rule . . . ." *Coleman*, 501 U.S. at 753 (quotation omitted). To establish actual prejudice, the error "must have resulted in substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (quotation marks and citation omitted). As one might surmise, actual innocence is "extremely rare" and should be applied as a ground for excusing procedural default "only in 'extraordinary' cases." *Davis v. Woods*, No. 05-CV-3414 (ENV), 2010 WL 3747669, at *6 (E.D.N.Y. Sept. 17, 2010) (citation omitted).

Strangely but not surprisingly, petitioner does not demonstrate cause for his failure to contemporaneously object at trial to most of the comments he now decries. Indeed, his counsel objected to several other comments made during the State's summation and even made an oral motion for mistrial based on two of those objections. *See* Trial Tr. at 465, 467, 476, 478-79. Moreover, given the responsive nature of the prosecutor's comments, and the trial court's instructions to the jurors regarding their role as fact-finders, *see id.* at 472, 480-81, King fails to show actual prejudice, much less that "the prosecutors' comments so infected the trial with

unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks omitted); *see also United States v. Young*, 470 U.S. 1, 12-13, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (noting that "if the prosecutor's remarks were 'invited,' and did no more than respond [to defense counsel's comments] . . . such comments would not warrant reversing a conviction"). As a result, this claim must be dismissed.[2]

IV.    Ineffective Assistance of Appellate Counsel

Lastly, King asserts that his appellate counsel was ineffective because she failed to challenge his conviction on the basis that (1) his waiver of the right to counsel during a pre-trial hearing was not made knowingly, intelligently and voluntarily; (2) a gang expert's trial testimony including "[testimonial] out-of-court statements by witnesses" violated the Confrontation Clause; and (3) the trial court should have apprised defense counsel that the verdict sheet included the statutory elements of the crimes charged before submitting it to the jury. Pet. at 19-21.

As a foundational matter, King has not exhausted the ineffective assistance claim. A *habeas* petitioner "must present [the substance of his] federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition," which requires the petitioner to "fairly apprise[ ]" the state court that he "is raising a federal constitutional claim

---

[2] Additionally, King appears to misunderstand the concept of the attorney as "unsworn witness," which occurs when an attorney "subtly impart[s] to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993). King points to no comments by the prosecutor pertaining to any first-hand knowledge of events presented at trial.

and of the factual and legal premises underlying the claim." *Grey v. Hoke*, 933 F.2d 117, 119

(2d Cir. 1991). To the point, King alleged ineffective assistance of appellate counsel in his two

*coram nobis* petitions, both of which were denied by the Appellate Division in 2015, but he did

not seek leave to appeal those decisions to the New York Court of Appeals. *See Rodriguez v.

Uhler*, No. 15-CV-9297 (GBD)(DF), 2017 WL 9807068, at *6 (S.D.N.Y. Oct. 23, 2017)

(petitioner must exhaust claim for ineffective assistance of appellate counsel by seeking leave to

appeal denial of *coram nobis* petition to the Court of Appeals), *R&R adopted*, 2017 WL 1633568

(S.D.N.Y. Apr. 3, 2018). However, since his window to appeal has closed, King "no longer has

'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey

v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Thus, the Court deems this claim exhausted, but

finds that consideration of it on federal habeas review is procedurally barred. *Hawkins v. Lape*,

No. 08-CV-2669 (BMC), 2009 WL 890549, at *4 (E.D.N.Y. Mar. 30, 2009).

As explained above, a federal court may only reach the merits of a procedurally barred

claim if the petitioner can show cause for the default and prejudice, or actual innocence. King

states that he did not appeal the denial of his first *coram nobis* petition because he did not know

he could; as to the second petition, he incorrectly asserts that it is still pending. *See* Pet. at 11,

13-14. However, a petitioner's "*pro se* status and ignorance of the law do not constitute cause,"

*Davis*, 2010 WL 3747669, at *16, and King has not come forward with evidence of actual

innocence. Accordingly, AEDPA does not permit the lifting of the procedural bar to review, and

the claim is lost.

Even assuming *arguendo* that the bar could be lifted, upon merits review, the Court finds

that King cannot overcome the "doubly deferential" standard applicable to ineffective assistance

claims brought pursuant to § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct.

1411, 173 L. Ed. 2d 251 (2009). Ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which requires *habeas* petitioners to show that "counsel's representation fell below an objective standard of reasonableness," and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 693-94.

Under *Strickland*, "appellate counsel is not obligated to raise every non-frivolous claim; instead, appellate counsel has the discretion to select among the claims at issue to maximize the likelihood of success on appeal." *Cardova v. Lavalley*, 123 F. Supp. 3d 387, 402 (E.D.N.Y. 2015) (citation omitted). King's counsel made a robust effort to challenge his conviction, extensively briefing several different grounds for appeal. Her decision not to raise the additional arguments King seeks to assert here is entitled to deference, and, moreover, demonstrated sound judgment.[3] In other words, a full *Strickland* review would not salvage this claim. It is

---

[3] As to King's first argument, the record reflects that his waiver of counsel at several pre-trial hearings in 2011 was made knowingly, voluntarily, and intelligently after sufficient inquiry by the trial court, as required under *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), and its progeny. *See* Dkt. 8-1 at 70-75 ("May 10, 2011 Hr'g Tr."); *id.* at 78, 82-85 ("July 27, 2011 Hr'g Tr."); *id.* at 98 ("Aug. 9, 2011 Hr'g Tr."). Second, the trial court did not err in admitting the testimony of the gang expert, Officer Myers, *see* Trial Tr. at 364-66, who did not offer any testimonial, out-of-court statements to prove the truth of specific allegations against King. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (finding that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination"); *see also United States v. Escobar*, 462 F. App'x 58, 62 (2d Cir. 2012) (affirming admission of expert testimony where "there is no evidence that [the expert] communicated any out-of-court testimonial statements to the jury"). Third, when the trial court asked the parties if they had examined the verdict sheet, King's trial counsel responded that he had seen the verdict sheet and had no objection. Trial Tr. at 428. Regardless, King's complaint that the verdict sheet "included statutory elements of the crimes charged," *see* Pet. at 21, does not identify any violation of federal law, and the Court finds none.

dismissed.

## Conclusion

In line with the foregoing, the writ of *habeas corpus* is denied, and the petition is dismissed.

Since King has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York

April 17, 2019

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO

United States District Judge